UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION

DAVID GARY,

          Plaintiff,

v.                              Case No:  2:19-cv-427-FtM-29

WOLFGANG DANIEL,

          Defendant.

_____

                    **OPINION AND ORDER**

     This  matter  comes  before  the  Court  on  defendant  Wolfgang
Daniel's Motion for Summary Judgment (Doc. #51) filed on August 6,
2021.  Plaintiff filed a letter in response (Doc. #55) on September
15, 2021.[1]  For the reasons set forth below, the motion is granted.

_____

          [1] Plaintiff David Gary is a *pro se* litigant. Following the
submission of defendant Wolfgang Daniel's Motion for Summary
Judgment, the Court provided Plaintiff with the appropriate
summary judgment notice (Doc. #52) and Plaintiff thereafter filed
a letter (Doc. #55) The letter does not indicate whether it was
filed in response to Defendant's motion, however, the Court will
construe it as such. See Flores v. Debski & Assocs., P.A., No. 21-
cv-20992-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 91325, at *1
(S.D. Fla. May 12, 2021) (quoting Tannenbaum v. United States, 148
F.3d 1262, 1263 (11th Cir. 1998)("Pro se filings are "held to a
less stringent standard than [filings] drafted by attorneys and
will, therefore, be liberally construed.")).

# I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)

(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

"*Pro se* filings are held to a less stringent standard than pleadings drafted by attorneys and are afforded liberal construction by courts." Rizvi v. Experian, No. 20-14148-CIV, 2021 U.S. Dist. LEXIS 144289, at *14 (S.D. Fla. Aug. 2, 2021) (emphasis added); see Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002) ("In the summary-judgment context, we have construed pro se pleadings more liberally than those of a represented party."). However, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." See Rizvi, 2021 U.S. Dist. LEXIS 144289, at *14 (S.D. Fla. Aug. 2, 2021) (quoting Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Therefore, a *pro se* plaintiff must

come forward with specific record evidence demonstrating the existence of a genuine issue of material fact.[2] See id.

**II.**

On January 24, 2020, plaintiff David Gary (Plaintiff) filed an Amended Complaint (Doc. #20) against defendant Wolfgang Daniel (Defendant) in his individual capacity as a detective with the Fort Myers Police Department.[3] Read liberally, Plaintiff's Amended Complaint asserts four claims against Defendant pursuant to 42 U.S.C. § 1983: (1) an unlawful warrantless entry into his apartment; (2) an unlawful search of his premises; (3) the destruction of property in the apartment; and (4) his unlawful arrest without just cause. (Doc. #20; Doc. #27, p. 5.)[4] Plaintiff

---

[2] The Eleventh Circuit has directed that particular care be exercised regarding motions for summary judgment against unrepresented parties. United States v. One Colt Python .357 Cal. Revolver, S/N T03461 W/Holster, 845 F.2d 287, 289 (11th Cir. 1988). In light of this directive, the Court provided Plaintiff with general guidance about motions for summary judgment and the types of evidence a party may submit in opposition to summary judgment, along with a link to the District Court's website for pro se litigants on proceeding without a lawyer.  See (Doc. #52.)

[3] Plaintiff's Amended Complaint states that he is bringing this action against defendant "Wolfgang Daniel and his Team." The Court, however, previously granted Defendant's Motion to Dismiss not only the Fort Myers Police Department (FMPD), but also "his team" as named defendants.  See (Doc. #15; Doc. #19; Doc. #27, p. 3.) Therefore, the Court will only consider Plaintiff's claims against Wolfgang Daniel.

[4] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not

alleges that the conduct violated his Fourth Amendment rights, and he seeks compensatory damages in the amount of $150,000. (Doc. #20, p. 4.) Defendant, on the other hand, argues that he did not violate any constitutional right, and that Plaintiff has failed to present any evidence to the contrary. (Doc. #51, p. 8.) Thus, Defendant asserts he is entitled to summary judgment concerning all four claims. (Id.)

The undisputed material facts are as follows:

**A.   Events Prior To The July 31, 2015 Search and Arrest**

Defendant, who has been employed as a detective in the Special Investigations Group ("SIG") of FMPD for approximately 4 years, specializes in drug related investigations.[5] (Doc. #51-1, ¶ 2.) In July 2015, Defendant was engaged in an ongoing investigation of a black male identified as Andrew Perry for possessing and selling cocaine from inside a residence located at 2505 Royal Palm Avenue, Apartment #27, Fort Myers, Florida 33901 (i.e., Plaintiff's apartment), in violation of § 893.13, Fla. Stat. (Id. at ¶ 5.) During this investigation, Defendant and other FMPD detectives

---

always correspond with the page number at the bottom of the document.

[5] Defendant has participated in over three hundred drug-related arrests and assisted in the preparation and/or execution of no less than two hundred drug-related search warrants. (Doc. #51-1, ¶ 3.)

utilized a confidential informant (CI) to conduct a series of controlled buys of narcotics at Plaintiff's apartment. (Id. at ¶¶ 6-7.) Approximately twenty days preceding July 29, 2015, Defendant and other FMPD detectives, with the assistance of the CI, made two controlled drug purchases of cocaine on two separate days from the suspect while at Plaintiff's apartment. (Id. at ¶¶ 6, 9-11.) Prior to and following the controlled drug purchases, Defendant conducted surveillance of Plaintiff's apartment on various dates and times which, in the Defendant's training and experience, revealed activity indicative of "street level drug sales." (Id. at ¶ 12.)

Based upon the controlled buys, surveillance, and investigation, Defendant applied for and received a search warrant for Plaintiff's apartment from a state court judge. (Id. at ¶¶ 13-15; Doc. #51-2.) Defendant states that he obtained the search warrant in accordance with the FMPD policies and procedures that all warrants be executed in a manner that comports with state and federal law. (Doc. #51-1, ¶¶ 17-18.)

**B.   The July 31, 2015 Search and Arrest**

On July 31, 2015, initial contact with the occupants of Plaintiff's apartment was made through a probation check. (Doc. #51-1, ¶ 21; Doc. #51-11, p. 3.) A resident of Plaintiff's apartment, David Gary, Jr., was on state probation at the time the search warrant was executed. (Doc. #51-1, ¶ 19; Doc. #51-3; Doc.

#51-11, p. 14; Doc. #51-13, p. 2.) An officer knocked on the apartment door, and a resident of Plaintiff's apartment opened the door and was advised of the probation check. (Doc. #51-1, ¶ 21; Doc. #51-13, p. 3.) Moments after initial contact, additional FMPD officers entered the apartment and advised the occupants of the search warrant and removed the occupants to the front porch of the apartment. (Doc. #51-1, ¶¶ 21-22, 24; Doc. #51-11, p. 4.) All the occupants were detained in handcuffs and read verbatim the contents of the search warrant, which is recorded by an officer's body camera video. (Doc. #51-1, ¶ 24; Doc. #51-4; Doc. #51-5.)

During the execution of the search warrant Defendant, along with three to five officers, were present at any given time when the alleged destruction of property would have occurred.[6] (Doc. #51-1, ¶ 25; Doc. #51-11, p. 16; Doc. #51-15, pp. 17-18.) Neither Plaintiff, nor any of the witnesses present in Plaintiff's apartment, saw Defendant destroy any property. (Doc. #51-11, pp. 9-10; Doc. #51-12, p. 6; Doc. #51-13, p. 11; Doc. #51-14, p. 7.) Defendant observed suspected marijuana in plain view sitting next to Plaintiff's bed, from which Plaintiff was previously removed. (Doc. #51-1, ¶¶ 25-26; Doc. #51-6.) Plaintiff was placed under arrest for possession of marijuana in violation of § 893.13(6b),

---

[6] Plaintiff alleges that Defendant destroyed his bedroom furniture, sofa and music CDs, and that his fiancé's diamond ring was missing from on top of a dresser. (Doc. #51-11, pp. 9-10.)

Fla. Stat. (Doc. #51-1, ¶¶ 25-29; Doc. #51-6; Doc. #51-8, pp. 1-2.)

### III.

In order to prevail in a civil rights action under [§] 1983, "a plaintiff must make a *prima facie* showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." Dunn v. City of Ft. Valley, 464 F. Supp. 3d 1347, 1359 (M.D. Ga. 2020)(citing Marshal Cnty. Bd. Of Educ. v. Marshal Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)). An officer acts under color of state law by acting with power possessed by virtue of the officer's employment with a governmental entity. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir. 1995).

Here, there is no dispute that Defendant was acting under the color of state law when Defendant obtained and executed a search warrant for Plaintiff's apartment by virtue of his employment with FMPD. The issue is whether Defendant deprived Plaintiff of his Fourth Amendment rights. The Court will address each alleged Fourth Amendment violation in turn below.

### A. Unlawful Warrantless Entry Into Plaintiff's Apartment

Plaintiff argues that on July 31, 2015, Defendant entered his apartment without possessing a search warrant. (Doc. #20, pp. 2,

4.) Defendant responds that he was in possession of a valid search warrant and lawfully entered Plaintiff's apartment without violating any of Plaintiff's Fourth Amendment rights. (Doc. #51, pp. 9-13.)

The Fourth Amendment provides that "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" shall not be violated. U.S. Const. amend. IV. "Freedom in one's own dwelling is the archetype of the privacy protection secured by the Fourth Amendment; conversely, physical entry of the home is the chief evil against which [it] is directed." Lange v. California, 141 S. Ct. 2011, 2018 (2021) (citing Payton v. New York, 445 U. S. 573, 585, 587 (1980) (internal quotation marks omitted)). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton, 445 U.S. 573, 586 (quotation marks and citation omitted).

While Plaintiff argues that Defendant did not possess a search warrant (Doc. #51-11, p. 7), the undisputed evidence shows otherwise. Defendant has attested to and provided a copy of the executed search warrant dated July 29, 2015, that was signed by Lee County Court Judge Archie B. Hayward, Jr., and gives permission to search Plaintiff's apartment located at 2502 Royal Palm Avenue, Apartment #27 in Fort Myers, Florida. (Doc. #51-1, at ¶¶ 13-15, 17-18; Doc. #51-2, pp. 1-4.) Additionally, Defendant has provided

body camera video of the Plaintiff and other occupants of the apartment being read the contents of the search warrant authorized by Judge Hayward. (Doc. #4; Doc. #5.)  Plaintiff's subjective belief that Defendant did not possess a search warrant is refuted by the record.  Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

The Court also finds that the search warrant was valid under Groh v. Ramirez, 540 U.S. 551 (2004), because it was issued upon finding "probable cause, supported by oath or affirmation, and particularly describing the place to be searched and, the persons or things to be seized." Id. at 557.  The search warrant affidavit provides probable cause that § 893.13, Fla. Stat.[7] was being violated by the sale and possession of cocaine.  This was based on Defendant's investigation and surveillance of Plaintiff's apartment, and included controlled drug buys by the FMPD in the apartment. (Doc. #51-2, p. 3.) In addition, the warrant described in detail the place to be searched:  2505 Royal Palm Avenue, Apartment #27, in Fort Myers, Florida, a two-story building with

---

[7]   In general, Section 893.13 prohibits the sale of, manufacturing, delivering, or possessing a controlled substance with intent to sell, manufacture, or deliver the substance, which includes cocaine.  See § 893.13, Fla. Stat.; see also, § 893.03, Fla. Stat.

an exterior salmon (and reddish-brown trim) color with a pitched roof and the number "27" affixed on the door in black lettering on a white plaque. (Id., pp. 1-2.)  Likewise, the warrant described with particularity the things to be seized:

> And that the following property or evidence may be found therein: cocaine, paraphernalia for the manufacture, distribution and ingestion of cocaine, records of financial transactions for the sale and purchase of cocaine, proceeds from the sale of cocaine, Fort Myers Police Department money used in controlled drug buys, any and all weapons used in the commission of and/or protection of, any articles of personal property intending to establish the identity of the person(s) in control and/or who has ownership of the residence being searched.  These articles include, but are not limited to, bills, mail, keys and or purchase/lease applications or agreements, any ledgers or documents and/or any other items linking the persons or person involved in this investigation to any violations of Florida Statues [sic] 893.13. This documentation can be contained in or stored on but not limited to papers, photographs or digital storage devices.

(Id., p. 3.) The Court finds that the search warrant obtained by Defendant to conduct a search at Plaintiff's apartment is valid under the Fourth Amendment.

As to the initial entry into Plaintiff's apartment, Defendant argues there was a knock and announcement before entering the residence. (Doc. #51, p. 11.) Furthermore, Defendant points out that he was not the first officer to initially make contact and enter the home; rather, initial contact and entry was made by a probation officer. (Id.)

The Eleventh Circuit has held that while the Fourth Amendment does not explicitly set forth a knock-and-announce principle, the Amendment "incorporates the important common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." United States v. Segura-Baltazar, 448 F.3d 1281, 1289 (11th Cir. 2006) (citing Wilson v. Arkansas, 514 U.S. 927, 930 (1995)). There are three interests protected by the knock-and-announce rule: (1) "the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident;" (2) "the protection of property" so that an individual may "avoid the destruction of property occasioned by a forcible entry;" and (3) the "elements of privacy and dignity that can be destroyed by a sudden entrance." Hudson v. Michigan, 547 U.S. 586, 594 (2006).

The record establishes that the initial entry into Plaintiff's apartment did not violate the common law knock and announce rule. The undisputed testimonial evidence shows that a probation officer first announced himself and entered Plaintiff's apartment, and that Plaintiff's son was on probation. Plaintiff stated in his deposition that the initial contact was for a probation check, (Doc. #51-11, pp. 12, 14), and Plaintiff's son confirmed that he was on probation on July 31, 2015, and was sitting in the living room when a someone knocked on the door and

announced "probation."   (Doc. #51-3; Doc. #51-13, p. 3.)   An
occupant of the apartment then opened the door and the probation
officer entered.   (Doc. #51-1, ¶¶ 19-21; Doc. #51-11, p. 12; Doc.
#51-13, p. 3.). Thereafter, Defendant, along with other officers,
entered the apartment and announced their intent to conduct a
search of the apartment pursuant to a search warrant. (Doc. #51-
1, ¶¶ 22, 25; Doc. #51-11, p. 3.)   Thus, the initial entry into
Plaintiff's apartment did not offend the general common-law knock
and announce rule.

The Court finds that the record establishes no Fourth
Amendment violation, and Defendant is entitled to summary judgment
as to these issues.

### B. Unlawful Search of Plaintiff's Apartment

Plaintiff appears to allege that Defendant conducted an
unlawful search of his apartment because he was not shown the
warrant prior to the search. See (Doc. #51-11, p. 7.) Defendant
asserts that no such showing is required. (Doc. #51, pp. 12-13.)

Defendant is correct that "the Fourth Amendment [does not]
require that the warrant and incorporated documents be [shown],
given to or read aloud to the property owner *before* the search."
United States v. Carter, No. 8:19-cr-397-T-60AEP, 2020 U.S. Dist.
LEXIS 168543, at *6 (M.D. Fla. Sep. 15, 2020) (citing United States
v. Grubbs, 547 U.S. 90, 98-99 (2006)(emphasis added)); see, e.g.,
United States v. Tracey, 597 F.3d 140, 146 n.5 (3d Cir. 2010) ("Of

13

course, the Fourth Amendment does not require the officer to provide a copy of the warrant to the subject before he conducts the search."); United States v. Cazares-Olivas, 515 F.3d 726, 730 (7th Cir. 2008) ("[W]hatever the most prudent course may be, the fourth amendment does not require officers to have a warrant in hand when searching."). This portion of Plaintiff's claim is unfounded both as a matter of law and fact.

Plaintiff also argues that the search is invalid because Defendant did not leave a copy of the search warrant with Plaintiff upon completing the search.  See (Doc. #15-11, p. 8.) The Fourth Amendment is not violated when an officer "fails to leave a copy of the search warrant with the property owner following the search" or "fails even to carry the warrant during the search." Leflore v. United States, No. 2:17cv393-AKK-CSC, 2020 U.S. Dist. LEXIS 7002, at *10 (M.D. Ala. Jan. 14, 2020).[8] Because the record evidence establishes that Defendant possessed a valid search warrant and was not required to show Plaintiff a copy of the warrant before the search or leave a copy of the document following the search,

___

[8] Federal Rule of Criminal Procedure 41, which states that an "officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom . . . the property was taken," does not apply to Defendant, an FMPD detective, as it is only applicable to federal law enforcement officers.  See Roberts v. Sormrude, No. 3:16cv68-MCR-CJK, 2018 U.S. Dist. LEXIS 166604, at *14 (N.D. Fla. Aug. 28, 2018) (citing Fed. R. Crim. P. 41(f)(1)(C) (finding that Rule 41 only applies to federal law enforcement officers)).

14

there was no violation of the Fourth Amendment.   Defendant is entitled to summary judgment as to this portion of Plaintiff's claim.

### C. Destruction of Property

Defendant also seeks summary judgment as to Plaintiff's claim that he destroyed property within the apartment during the execution of the search warrant. (Doc. #51, p. 14.) It is generally left to the discretion of the executing officers to determine how to best to proceed with the performance of a search authorized by warrant, subject to the general Fourth Amendment protection "against unreasonable searches and seizures." Dalia v. United States, 441 U.S. 238, 257 (1979)). "Yet, from the moment of entry, to the point of departure, the manner in which an officer executes a warrant is subject to judicial review as to its reasonableness." Simmons v. City of Orlando, No. 6:16-cv-1909-Orl-41KRS, 2017 U.S. Dist. LEXIS 232198, at *16 (M.D. Fla. Sep. 15, 2017).

### (1) Whether Defendant Destroyed Plaintiff's Property or Is Liable Under A Supervisory Capacity

Plaintiff contends that Defendant destroyed his bed, sofa, and music CDs, along with stealing his fiancé's diamond ring. (Doc. #20, pp. 3-4; Doc. #51-11, pp. 9-10.) Defendant responds that other than bare allegations, Plaintiff has provided no evidence to show that he damaged or stole Plaintiff's property. (Doc. #51, p. 14.)

In his sworn affidavit, Defendant avers that during the execution

of the search warrant:

> [He] did not pour cat litter on any of the Plaintiff's
> furniture or in any other place in the apartment, [he]
> did not pour and/or throw any cat urine or excrement
> on any furniture of the Plaintiff or in other place
> [sic] of Plaintiff's apartment, [he] did not destroy
> any of the Plaintiff's furniture, [he] did not destroy
> and/or take any of the Plaintiff's CDs, and [he] did
> not take any jewelry.

(Doc. #51-1, ¶¶ 32-33.)

The evidence of record shows that at any given time during

the execution of the search warrant there were approximately three

to five officers who were inside Plaintiff's apartment conducting

the search when the alleged destruction/theft of Plaintiff's

property occurred. (Doc. #51-1, ¶ 25; Doc. #51-11, p. 4.)   The

testimonial evidence also shows that Plaintiff, as well as the

other occupants, did not see Defendant commit acts that resulted

in the damage, destruction, or theft of Plaintiff's property.

Plaintiff testified that he was not in the apartment during the

search and the door to the apartment was closed such that he could

not see anyone or anything. (Doc. #51-11, pp. 10-11.) Plaintiff's

son also confirmed that all the occupants of the apartment were on

the front porch while the search was conducted, and that he could

not see who allegedly committed the destruction because the front

door was closed. (Doc. #51-13, pp. 5, 10-11.) Likewise, Plaintiff's

fiancé testified that she did not witness who allegedly damaged

the property. (Doc. #51-12, pp. 5-6.) Emily Caesar, who was also at Plaintiff's apartment when the search was conducted, did not see Defendant or any other officer damage property because she was outside of the apartment. (Doc. #51-14, p. 7.) Finally, like all the other occupants, Mr. Andrew Perry was also not inside the apartment during the search and was unable to see who allegedly destroyed or damaged the contents of Plaintiff's apartment. (Doc. #51-15, p. 8.)

Based on the foregoing testimony, the Court finds there is no factual evidence from which a reasonable inference could be drawn that Defendant personally caused such damage or destruction to Plaintiff's property. "Plaintiff's subjective belief is insufficient to resist summary judgment on this point." Jacobs v. City of W. Palm Beach, No. 9:14-CV-80964-Rosenberg/Bran, 2015 U.S. Dist. LEXIS 104491, at *7 (S.D. Fla. Aug. 10, 2015); see, e.g., Rondon v. Home Nurse Corp., No. 21-20857-Civ-Scola, 2021 U.S. Dist. LEXIS 156544, at *11 (S.D. Fla. Aug. 18, 2021) (citing Solliday v. Fed. Officers, 413 F. App'x 206, 207 (11th Cir. 2011) (The Court notes that "[c]onclusory, uncorroborated allegations by a plaintiff in a affidavit or deposition will not create an issue of fact for trial to defeat a well supported summary judgment motion.")); Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (a mere "scintilla" of evidence is insufficient to defeat a motion for summary judgment). Defendant is therefore entitled to summary

judgment that he did not cause destruction/theft of Plaintiff's property.

Defendant also argues that Plaintiff's attempt to hold him liable for the actions of other unnamed officers in a supervisory capacity must also fail. (Doc. #51, p. 14.) Defendant asserts that Plaintiff has not provided any evidence that Defendant was acting in a supervisory capacity over officers who may have damaged/stolen Plaintiff's property. (Id.; Doc. #51-1, ¶ 34.)

"It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." Coleman v. Bowden, 797 F. App'x 422, 427 (11th Cir. 2019) (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted)). Rather, "[a] supervisor may be liable under § 1983 only if [he] personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." Id. (citing Keating, 598 F.3d at 762) (internal quotations omitted)). The causal connection can be established by showing that (1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) when the facts support an "inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would

18

act unlawfully and failed to stop them from doing so." Dickinson v. Cochran, 833 F. App'x 268, 272 (11th Cir. 2020) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation marks omitted)).  This "standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Dickinson, 833 F. App'x at 272 (citing Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014) (alterations adopted and quotations omitted)).

Here, Plaintiff has not alleged or provided any evidence showing that Defendant was a supervisor or acted in this capacity during the July 31, 2015 search.  Furthermore, Plaintiff has not satisfied the extremely rigorous standard by presenting facts or evidence from which the Court could infer a history of unconstitutional conduct, implementation of customs or policies that caused a violation of Plaintiff's Fourth Amendment rights, or that Defendant directed other FMPD officers to damage or destroy Plaintiff's property. See Dickinson, 833 F. App'x at 272. Defendant is entitled to summary judgment as to this portion of the claim.

**(2)  Destruction of Plaintiff's Property**

Next, Defendant argues that to the extent Plaintiff can show any damage to his property, Plaintiff cannot show that the damage rose to the level necessary for encroachment upon his constitutional rights. (Doc. #51, pp. 16, 22-23.) "The destruction

19

of property does not necessarily violate the Fourth Amendment," Simmons, 2017 U.S. Dist. LEXIS 232198, at *16 (citing Williams v. Alford, 647 F. Supp. 1386, 1392 (M.D. Ala. 1986)), because "officers executing search warrants on occasion must damage property in order to perform their duty." Dalia, 441 U.S. at 258. However, when destruction becomes "excessive or unnecessary" it crosses constitutional boundaries. See United States v. Ramirez, 523 U.S. 65, 71 (1998); see also Pena v. Marcus, 715 F. App'x 981, 985 (11th Cir. 2017). "To determine whether officers damaged property in violation of the Fourth Amendment, courts examine the reasonableness of the officers' actions." Pena, 715 F. App'x at 986 (citing Ramirez, 523 U.S. at 71-72). "The reasonableness of the damage must be evaluated with reference to the target of the search, such as a more invasive contraband search." Jackson v. Suffolk Cnty., 87 F. Supp. 3d 386, 401-02 (E.D.N.Y. 2015) (citations omitted).

Plaintiff did not present any tangible evidence of the purported property destruction, i.e., photographs of damaged furniture, or receipts for repair costs of furniture or for the purchase of new furniture.[9] The only evidence before the Court is

---

[9] Defendant provided photographs that he attests were taken during the execution of the execution of the search warrant for Plaintiff's apartment. (Doc. #51-1, ¶¶ 28, 36.) None of the photographs show the damage complained of by Plaintiff. See (Doc. #51-7.)

somewhat contradictory deposition testimony. Specifically, Plaintiff testified that during the search Defendant "taunted" him by "throwing cat shit all over [his] . . . sofa," Defendant "tore up [his] bed," and "tore up all [of his 300] CDs." (Doc. #51-11, pp. 9-11.) Plaintiff's fiancé testified that their sofa had two holes and it was flipped over, that the bed rails for one of the beds were broken, and that cat litter was "everywhere." (Doc. #51-12, pp. 5-6.) Plaintiff's son, on the other hand, deposed that the sofa was not permanently damaged (i.e., it did not have holes), and that the bed just had to be put back together. (Doc. #51-13, p. 8.) Ms. Caesar stated that she did not see any holes in the sofa, but in general the apartment was "a mess," and that all the furniture was turned over, the cat litter box contents were turned over on the floor (but was not poured onto the sofa), and one of the bed rails was bent and/or broken. (Doc. #51-14, pp. 6-7.)

Viewed in the light most favorable to Plaintiff, the contradictory testimony demonstrates that Plaintiff's apartment was in disarray, the furniture was turned over, cat litter was scattered about on the floor, and a bed rail was bent. This does not justify an inference that the damage was excessive or unnecessary. See, e.g., Alford, 647 F. Supp. at 1392 (where holes were knocked in sheetrock, stereo was broken, guns were damaged, trash dumped out of a trash can, and the "house was left in substantial disarray," the Court found the damage was minimal and

did not violate any constitutional right); DeSpain v. Louisville
Metro. Gov't, No. 3:14-CV-P602-CHB, 2021 U.S. Dist. LEXIS 156887,
at *15 (W.D. Ky. Aug. 19, 2021)(on summary judgment concluding
that as a matter of law the property damage was reasonable where
windows were knocked out and sofa cushions were torn); Chumley v.
Miami Cnty., Ohio, No. 3:14-CV-16, 2015 U.S. Dist. LEXIS 24286,
2015 WL 859570, at *10 (S.D. Ohio Feb. 27, 2015) (finding on
summary judgment that as a matter of law, emptying closets, dumping
items on bed, and leaving house in disarray did not amount to a
constitutional violation).

The valid and broad search warrant, authorized officers to
find an array of items related to the manufacturing, distribution,
and ingestion of cocaine, some of which are small and easy to hide
and difficult to find (i.e., drug paraphernalia, papers, money,
keys, weapons). (Doc. #51-2, p. 3.) Because "[n]arcotics, by their
nature, are incredibly easy to hide and can be hidden virtually
anywhere, Vale v. Louisiana, 399 U.S. 30, 34 (1970), searches must
necessarily be intrusive." Alford, 647 F. Supp. at 1393.  Since
Defendant, and the other officers, were looking for evidence
related to narcotics, it was not unreasonable for the law
enforcement officers to believe that a search of Plaintiff's
apartment, including the furniture and other belongings within the
apartment, may need to be thorough to find evidence of narcotics
possession or sales. See, e.g., California v. Carney, 471 U.S.

386, 388 (1985) (drugs found in cupboards and refrigerator); United States v. Washington, 2012 U.S. Dist. LEXIS 119203, 2012 WL 3638227, *7 (E.D. Cal. Aug. 22, 2012) (noting that drug dealers often hide contraband throughout their residences). United States v. Davis, 199 U.S. App. D.C. 95, 617 F.2d 677, 696 (1979)("Narcotics in particular may be hidden in very small places, so an effective search in this case would require a painstaking examination of most of the property in [plaintiff's] house."). Accordingly, the evidence supports the conclusion that the alleged property damage as a matter of law "does not state a violation of constitutional magnitude" given the nature of the search. Alford, 647 F. Supp. at 1392.

### D. Unlawful Arrest Without Just Cause

Plaintiff alleges that Defendant arrested him without just cause when Defendant placed him in handcuffs "even though there were no drugs on [his] person nor any videos of [his] home selling." (Doc. #20, p. 2.)

"One of the [Fourth] Amendment's protections is the right to be free from arrest without probable cause." Barnett v. Macarthur, 956 F.3d 1291, 1296 (11th Cir. 2020). "Probable cause exists when 'an arrest is objectively reasonable based on the totality of the circumstances.'" Id. (citing Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or

she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (citation and internal quotation marks omitted). In other words, probable cause to arrest "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." D.C. v. Wesby, 138 S. Ct. 577, 586 (2018) (citation and internal quotation marks omitted). "Probable cause constitutes an absolute bar to § 1983 claims alleging false arrest." Khoury v. Miami-Dade Cnty. Sch. Bd., 29 Fla. L. Weekly Fed. C6 (U.S. 11th Cir. July 7, 2021) (citing Henley v. Payne, 945 F.3d 1320, 1329 n.2 (11th Cir. 2019)).

In this case, the video evidence shows that Plaintiff did not have actual possession of the marijuana found in the bedroom from which Plaintiff was removed.  (Doc. #51-1, ¶¶ 25-27; Doc. #51-6.) Defendant concedes that this is true,[10] but argues that he had

---

[10] Defendant states that the search warrant for Plaintiff's apartment was executed to find evidence of the possession, sale, manufacture, or distribution of cocaine.  (Doc. #51, p. 17; Doc. #51-2, p. 3.) During the search, however, Defendant saw in "plain view" what he suspected be marijuana. (Doc. #51, ¶¶ 25-27.) Defendant argues that according to the "plain view" doctrine, he had a lawful right to seize the marijuana. (Doc. #51, p. 18.) The Court agrees. As the Court previously found, Defendant was in possession of a valid search warrant for Plaintiff's Fort Myers residence, and a video of the search undisputedly shows that Defendant saw in plain view a bag that provided the incriminating character of marijuana, which Defendant avers was immediately apparent to him based on his training and experience. (Doc. #51, ¶¶ 25-27; Doc. #51-6.) See United States v. Ragin, No. 16-20124-

probable cause to arrest Plaintiff based on "constructive possession" of marijuana, instead of actual possession. (Doc. #51, p. 18, citing <u>Norris v. Williams</u>, No. 3:16-cv-806-J-39PDB, 2017 U.S. Dist. LEXIS 224672, at *9 (M.D. Fla. Sep. 5, 2017)).

Constructive possession of contraband can provide probable cause to lawfully arrest a suspect. <u>See</u> <u>United States v. Davis</u>, 345 F. App'x 477, 478-79 (11th Cir.2009). "The Eleventh Circuit has defined constructive possession as 'the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance.'" <u>Raymond v. United States</u>, No. 16-CIV-20013-KING, 2017 U.S. Dist. LEXIS 8966, at *42 (S.D. Fla. Jan. 20, 2017) (citing <u>United States v. Glasgow</u>, 658 F.2d 1036, 1043 (5th Cir. Unit B 1981)). "Constructive possession . . . may be proven through circumstantial evidence that shows ownership, dominion, or control over the drugs or the premises where the substance is located." <u>Raymond</u>, 2017 U.S. Dist. LEXIS 8966, at *42

---

CR-UNGARO/OTAZO-REYES, 2016 U.S. Dist. LEXIS 71440, at *1 (S.D. Fla. May 2, 2016) ("The plain view doctrine allows a warrantless seizure where (1) an officer was lawfully located in a place from which a seized object could be plainly viewed and has a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.") Plaintiff has not alleged the marijuana was unlawfully seized, and there are no facts or contrary evidence to show the seizure was unlawful.

(S.D. Fla. Jan. 20, 2017) (citing United States v. Poole, 878 F.2d 1389, 1392 (11th Cir.1989)).

Here, Plaintiff does not dispute that Defendant searched an apartment on July 31, 2015 that was "[his] home," and the uncontroverted evidence establishes that Plaintiff was in the bedroom prior to the commencement of the search and that a bag of marijuana was located in the bedroom, within arm's reach next to the bed where Plaintiff was found. (Doc. #20, p. 2; Doc. #51-1, ¶¶ 25, 27; Doc. #51-6.) These undisputed facts and evidence are sufficient to circumstantially demonstrate that Plaintiff exercised or had the power to exercise dominion and control over the marijuana, and were sufficient to provide Defendant with probable cause for Plaintiff's arrest for possessing marijuana in violation of § 893.13(6b), Fla. Stat. (Doc. #51-8, pp. 1-2.) See Norris, 2017 U.S. Dist. LEXIS 224672, at *9-11 (constructive possession existed where drugs were found in a home where the plaintiff resided with his mother, and were located in the plaintiff's bedroom where he was with his friends just prior to the search); see also United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989) ("[A] person who owns or exercises dominion and control over a . . . residence in which contraband is concealed may be deemed to be in constructive possession of the contraband . . . ."). The Court therefore finds that Defendant had probable

cause to arrest Plaintiff, and Plaintiff's Fourth Amendment rights were not infringed upon.

### E. Qualified Immunity

Finally, Defendant argues that his actions during the July 31, 2015 search are otherwise protected by qualified immunity.[11] (Doc. #51, pp. 19-24.) Qualified immunity is an affirmative defense which protects government officials sued in their individual capacities from liability when: (1) they act within the scope of their discretionary authority, and (2) their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wade v. United States, No. 20-11962, 2021 U.S. App. LEXIS 27999, at *15 (11th Cir. Sep. 17, 2021) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"To invoke qualified immunity, a public official must first establish that he was acting within the scope of his discretionary authority when the challenged action occurred." Sosa v. Martin Cnty., No. 20-12781, 2021 U.S. App. LEXIS 28401, at *10 (11th Cir. Sep. 20, 2021) (citing Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). "When we speak of 'discretionary authority,' we mean all actions the official took (1) in performing his duties and (2) in the scope of his authority." Id. (citing Jordan v. Doe,

---

[11] Although Plaintiff has not argued whether qualified immunity is appropriate, the Court will address Defendant's argument in support thereof.

38 F.3d 1559, 1566 (11th Cir. 1994)). If the defendant was not acting within his discretionary authority, he is ineligible for qualified immunity. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

Here, the uncontroverted evidence shows that Defendant executed a valid search warrant and arrested Plaintiff, both of which fall within an officer's duties.  See, e.g., Pena, 715 F. App'x at 985 (executing a search warrant is within deputies' discretionary functions); Sampson v. City of Brunswick, 549 F. App'x 858, 860 (11th Cir. 2013); (detaining plaintiffs and executing search warrant are enforcement officer's discretionary duties); Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004) (finding a sheriff's deputy performed a discretionary function by making an arrest).  Moreover, even though Plaintiff has presented no factual allegations to challenge whether Defendant was acting within his discretionary authority, any such challenge would be unavailing; it is clear that performing searches and making arrests are legitimate job-related functions, within the power of these law enforcement bodies. See, e.g., Pair v. City of Parker, Fla., Police Dept., 383 F. App'x 835, 839 (11th Cir. 2010)(finding that Florida law does not prohibit a city law enforcement officer from obtaining a warrant from a judge and executing the warrant, along with making an arrest); Thorn v. Randall, No. 8:14-cv-862-T-36MAP, 2015 U.S. Dist. LEXIS 77842, at

*11 (M.D. Fla. June 16, 2015)(finding that the execution of a search warrant was within the discretionary authority of a city police officer).

Because Defendant was acting within the scope of his discretionary authority, the burden shifts to Plaintiff to demonstrate that Defendant is not entitled to qualified immunity. See Sosa, 2021 U.S. App. LEXIS 28401, at *11. "First, []he must establish that the defendant violated a constitutional right. Second, he must demonstrate that the violated right was 'clearly established.'" Norris v. Hicks, 855 F. App'x 515, 521 (11th Cir. 2021)(citations and quotations omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012).

As discussed above, there are no genuine issues of material fact in this case to preclude summary judgment as to whether Plaintiff's constitutional rights were violated under the Fourth Amendment. The Court has found that Defendant obtained a valid search warrant from a neutral judge and lawfully executed the search warrant on July 31, 2015, when Defendant (and other FMPD officers) entered and searched Plaintiff's apartment for evidence relating to the possession and sale of cocaine. See Messerschmidt

v. Millender, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith.").

Similarly, the Court found Plaintiff could not prove any Fourth Amendment violation concerning his allegation that Defendant destroyed his property since he (and other witnesses) did not see Defendant's actions within the apartment, nor did Plaintiff provide an evidence to establish that the alleged damage was excessive or unnecessary such that a constitutional violation occurred. See Alford, 647 F. Supp. at 1391 (no constitutional violation was found where house was in disarray, trash was on the floor, damage occurred to the plaintiff's stereo and gun, and holes were in the wall).

Finally, the Court found that Defendant had probable cause to arrest Plaintiff based on Plaintiff's dominion and control over the marijuana that was in plain view and in arm's reach next to the bed where Plaintiff was located prior to commencement of the search.  Thus, Plaintiff has not met his burden in showing that Defendant violated his constitutional rights in making an arrest. Defendant's request for summary judgment is granted and he is

entitled to the shield of qualified immunity concerning all of Plaintiff's claims.

Accordingly, it is now

**ORDERED**:

Defendant Wolfgang Daniel's Motion for Summary Judgment (Doc. #51) is **GRANTED.** The Clerk shall enter judgment in favor of Defendant.

**DONE AND ORDERED** at Fort Myers, Florida, this __4th__ day of October, 2021.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record